IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| THOMAS L. WILSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case. No. 23-3030-EFM-TJJ |
| | ) |
| ROBERT K. WALLACE, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S PURPORTED MOTION

Defendants Robert K. Wallace and Chad D. Clemons ("Defendants"), through Assistant Attorney General Matthew L. Shoger, respond in opposition to Plaintiff Thomas L. Wilson's Motion Requesting Trial (Doc. 32). The purported "motion" is in actuality a *response* to Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. 16). *See Castro v. United States*, 540 U.S. 375, 381-82 (2003) (saying federal courts have authority to interpret a filing in accordance with its substance rather than the way it is titled). As an initial matter, the response is almost three months late and should be stricken.

Regardless, the response does not controvert Defendants' legal arguments or statement of material facts. Wilson does not even address Defendants' legal arguments *at all*. As required by D. Kan. Rule 56.1(d), Defendants served upon Wilson the required Notice to Pro Se Litigant Who Opposes a Summary Judgment Motion, along with the required texts of D. Kan. Rule 56.1 and Fed. R. Civ. P. 56. (Doc. 21.) This explained to Wilson how to respond to a motion for summary judgment. Yet in Wilson's response he does not dispute (or even reference) any of Defendants' numbered facts as required by D. Kan. Rule 56.1, so Defendants' statement of material facts should be deemed admitted. Wilson attempts instead to dispute exhibits.

Regarding Wilson's ¶ 1, he alleges without admissible evidence that a forced cell entry

was used on September 11, 2023, due to him having multiple seizures. Even if true, that would not make it unconstitutional to not execute a forced cell entry under the circumstances of this case in February 2022. It would not contradict that a forced cell entry by its very nature involves a risk of physical harm and even a risk of death to facility staff. (Defendants' ¶ 9 in Doc. 17 at 5.) It also would not establish a blanket policy to always use forced cell entries to treat seizures in restrictive housing, as Wilson appears to suggest, but even if it did, "a defendant's violation of a prison policy does not a constitutional violation make." *Williams v. Miller*, 696 F. App'x 862, 869 & n.14 (10th Cir. 2017) (citing *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993)). So even if the bare allegations in Wilson's ¶ 1 were supported by admissible evidence, that would not establish a genuine dispute regarding any material facts. Although Wilson appears to reference facts relevant to Defendant's ¶¶ 8-9 (Doc. 17 at 5), Wilson fails to controvert any of Defendants' statement of material facts with his ¶ 1.

  Wilson's ¶ 2 simply admits the facts stated in Defendants' ¶ 6. (*See* Doc. 17 at 4.) Wilson insists that in order to prevail Defendants would need to prove that he possessed more than those two known contraband weapons. Defendants need not do so. Defendants have not relied on any additional weapons having been possessed by Wilson. Wilson attempts to dispute a fact Defendants have not asserted. Having a history of weapons possession means simply that he has possessed contraband weapons in the past. And, in the circumstances of this case, it was the recent past. Wilson also does not controvert Defendants' ¶ 7, which stated that weapons possession was part of why he was placed in restrictive housing on "Other Security Risk" status for the safety and security of the facility. (Doc. 17 at 4.) And Defendants have already addressed Wilson's story about why he had the contraband weapons in their memorandum in support, saying, "Nothing in the Constitution requires Defendants to have fully believed – or even to have

known – Wilson's story about why he had the contraband weapons." (Doc. 17 at 17.)

Regarding Wilson's ¶ 3, Wilson cites part of an informal statement by Defendant Clemons stating that Wilson's cellmate "had to half drag / half carry [Wilson] to the cell door in order to be restrained." (Doc. 32 at 1; *see also* Doc. 32-1 at 1.) First, as mentioned above, Wilson has not followed the requirements of D. Kan. Rule 56.1 because he does not state the number of any of Defendants' fact(s) that is/are disputed, so he has not properly controverted any facts in Defendants' statement of material facts.

Defendants' are left to guess which paragraphs Wilson is attempting to contest, although Wilson's ¶ 3 may be relevant to Defendants' ¶ 24 (Doc. 17 at 6). But regardless of how Wilson made his way to the door, with assistance or without, Wilson does not contest that nurse Preedin-Caine was providing medical attention in the form of medical observation before Wilson began moving toward the door. (Defendants' ¶ 22.) He does not contest that medical observation included monitoring his respirations and movements, such as movements of his shoulders and neck. (Defendants' ¶¶ 15-16.) And Wilson does not cite any evidence suggesting that Defendants or nurse Preedin-Cain had any reason to believe Wilson would not eventually be able to make it to the door without assistance. (*See* Defendants' ¶¶ 17-19, which Wilson has not contested.)

Wilson does not contest that, after the second seizure, medical observation occurred until he made it to the door and he was restrained, at which point nurse Preedin-Caine medically assessed him. (Defendants' ¶¶ 22-23.) He does not contest that Preedin-Caine assessed his state of consciousness, pupils, vital signs, and the general stability of his condition. (Defendants' ¶¶ 25-26, 28.) He does not contest that despite being alert and oriented (Defendants' ¶ 25) he failed to answer her question when she asked him if he had any injuries from the event (Defendants' ¶ 27). So he does not contest that Preedin-Caine attempted to assess his injuries and

3

that he thwarted her attempts to do so. (Defendants' ¶ 27.) As Defendants stated in their memorandum in support, "the nurse did not cease medical observation and treatment until she was convinced that Wilson was in a stable condition." (Doc. 17 at 25.) Wilson does not contest that Preedin-Caine suggested follow-up with medical staff if needed (Defendants' ¶ 28). And he does not allege or establish that he pursued any follow-up with medical staff about any concerns but only that he complained to non-medical personnel.

In Wilson's ¶ 4, he relies on an informal statement by Defendant Clemons, a non-medical staff person, regarding what was documented and treated by nurse Preedin-Caine. According to Wilson, the statement says that nurse Preedin-Caine did not thoroughly assess him and treat him for "chest pains" and the presence of blood and mucus on his T-shirt. (Doc. 32 at 1.) But that statement does not mention chest pains at all. (Doc. 32-1 at 2.) And while it alleges that there was blood and mucus on Wilson's shirt, Defendants have already addressed this exact statement in their memorandum in support of their motion, saying that "no evidence supports that the blood came from any visibly apparent injuries sustained." (Doc. 17 at 24.) Additionally, the statement does not state it was a significant amount of blood or mucus, that it resulted from seizures, or that it was even present on Wilson's shirt in the immediate aftermath of the seizures but only later when Wilson called Clemons to his cell after the nurse had left. (Doc. 32-1 at 2.) The statement does not allege that the level of documentation or treatment was inappropriate, but only that the blood and mucus were not observed or treated (Doc. 32-1 at 2), which further shows that any blood and mucus on Wilson's shirt were not present in a significant amount in the immediate aftermath of the seizures while he was being medically assessed.

Even if the statement did allege that the level of documentation or treatment was inappropriate, that would be irrelevant to the question of liability for the Defendants. Any failure

4

by the nurse to fully assess Wilson after the seizures were over and the cell door was opened would not retroactively create liability on the part of the Defendants, somehow showing that they should have executed a forced cell entry earlier. (*See* Doc. 1 at 3.)[1]

Because Wilson has failed to timely and properly controvert Defendants' statement of material facts, Defendants' statement of material facts should be deemed admitted in its entirety. D. Kan. Rule 56.1(a); *see also Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002). But even if every allegation Wilson makes in his response were timely, proper, and supported by admissible evidence, no genuine dispute would exist regarding any material facts. And, as stated above, Wilson has not contested Defendants' legal arguments at all, including the entire motion-to-dismiss portion of Defendants' motion.

For the reasons above and in Defendants' Memorandum in Support (Doc. 17), the Defendants respectfully request that the Court grant their Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. 16) in its entirety.

Alternatively, if the Court considers Plaintiff's Motion Requesting Trial as a motion rather than a response, Defendants request that the Court enter an order denying it as moot or premature, and for such other and further relief as the Court deems just and proper.

---

[1] And a lay person's statement that he subjectively believes documentation or treatment to have been improper, even if the statement of subjective belief was supported by the record, would not create a genuine dispute of material fact regarding the appropriateness of the documentation or treatment, which are matters of expert medical judgment. *See Estate of Beauford v. Mesa Cnty.*, 35 F.4th 1248, 1271 (10th Cir. 2022) ("a mere difference of opinion over matters of expert medical judgment or a course of medical treatment fails to rise to the level of a constitutional violation"). Further, Wilson still does not contest that the nurse attempted to assess his injuries and that Wilson thwarted her attempts to do so by failing to answer her questions when she asked him if he had any injuries from the event.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
KRIS W. KOBACH

/s/ Matthew L. Shoger
Matthew L. Shoger, KS No. 28151
Assistant Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
matt.shoger@ag.ks.gov
(785) 296-2215
Fax: (785) 291-3767
*Attorney for Defendants*

6

## **CERTIFICATE OF SERVICE**

   I hereby certify that on this 10th day of October, 2023, the foregoing document was filed with the clerk of the court by using the CM/ECF system, with a copy to be served by means of first-class mail on the 11th day of October, 2023, postage prepaid, addressed to:

Thomas L. Wilson #70525
El Dorado Correctional Facility-Central
P.O. Box 311
El Dorado, KS 67042
*Plaintiff, pro se*

               */s/ Matthew L. Shoger*
               Matthew L. Shoger
               Assistant Attorney General