## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

THOMAS L. WILSON,

*Plaintiff,*

vs.

Case No. 23-CV-3030-EFM-TJJ

ROBERT K. WALLACE, et al,

*Defendants.*

## MEMORANDUM AND ORDER

Before the Court is Defendants' unopposed Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment (Doc. 16). Defendants Robert K. Wallace and Chad D. Clemons ask the Court to dismiss Plaintiff Thomas L. Wilson's claims or in the alternative grant summary judgment.

Defendants first ask the Court to dismiss Plaintiff's § 1983 claims against them in their official capacities, invoking Eleventh Amendment sovereign immunity. Second, they ask the Court to dismiss Plaintiff's First Amendment Retaliation claim for failure to establish a retaliatory motive. Third, they ask the Court to dismiss or, alternatively, grant summary judgment on Plaintiff's Eighth Amendment claims against them in their individual capacities based on qualified immunity. Fourth, if Plaintiff's § 1983 claims survive summary judgment, they ask the Court to

dismiss or grant partial summary judgment on his claims for punitive damages for lack of the requisite subjective intent. Finally, if Plaintiff's § 1983 claims are eliminated, they ask the Court to decline exercising supplemental jurisdiction over his state law negligence claim.

For the reasons stated below, the Court grants Defendants' Motion to Dismiss. Thus, Defendants' Motion as to Plaintiff's claims for punitive damages under § 1983 is denied as moot. Having dismissed all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim.

## I.        Factual and Procedural Background[1]

Plaintiff is currently in custody at El Dorado Correctional Facility ("EDCF") run by the Kansas Department of Corrections ("KDOC"). He brings this civil rights action against Defendants, who both work at EDCF. This case arises out of the EDCF staff's response to a medical incident that Plaintiff allegedly suffered while incarcerated at EDCF.

On February 6, 2022, Plaintiff's cellmate made two sick calls between 3:40 A.M. and 5:19 A.M. because Plaintiff exhibited seizure-like activity. Defendant Clemons and Nurse Daci Preedin-Caine were among those who responded to the sick calls. EDCF staff did not initially enter Plaintiff's cell, but instead observed him from the other side of his cell door. Plaintiff alleges that as they watched he was on the ground suffering a seizure, unable to come to the cell door, and left choking on his own vomit, blood, and urine while EDCF staff watched. Because Plaintiff was unable to come to the cell door, Defendant Clemons radioed Defendant Wallace for permission to

---

[1] Because Defendants' first move to dismiss under Rule 12(b)(1) and (b)(6), the facts in this section are taken from Plaintiff's Complaint unless otherwise cited.

conduct a forced cell entry. Defendant Wallace denied permission because of Plaintiff's history of weapons possession.

Unable to conduct a forced cell entry, Nurse Preedin-Caine did not medically treat Plaintiff when responding to the first sick call, and eventually left the scene. When she returned for the second sick call, Plaintiff was able to come to the cell door with the help of his cellmate to receive medical treatment. Plaintiff remained in his cell that night and had a follow-up appointment a few days later. At that time, he was prescribed pain medication for what was described by medical staff as "[p]robable post concussive syndrome after hitting head."

Plaintiff filed his Complaint against the Defendants on February 6, 2023. He asserts Defendant Wallace acted negligently by refusing to authorize Defendant Clemons's request to conduct a forced cell entry. Additionally, Plaintiff appears to assert a First Amendment Retaliation claim, alleging that Defendant Wallace "refused [Plaintiff] immediate medical care treatment out of retaliation because of a past 'PREA' complaint [Plaintiff] filed against him in 2019–2020."[2] He also asserts that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by preventing medical treatment for his serious medical needs, i.e., his seizures. Plaintiff seeks $2 million dollars in "punitive damages for pain and suffering" due to ongoing back pain allegedly caused by Defendants by preventing immediate medical treatment.

Now, Defendants move to dismiss the case, or alternatively, for summary judgment. Plaintiff did move for default judgment in this case which was denied by the Court.[3] Plaintiff has not responded to Defendants' Motion.

---

[2] PREA is the acronym for the Prison Rape Elimination Act, 34 U.S.C. § 30301.

[3] Doc. 30.

## II.  Legal Standard

### A.  Motion to dismiss under Fed. R. Civ. P. 12(b)(1)

Under Rule 12(b)(1), a defendant may move to dismiss a claim for lack of subject-matter jurisdiction.[4] Federal courts are courts of limited jurisdiction, and a presumption exists against jurisdiction.[5] The party asserting jurisdiction bears the burden of establishing its existence.[6] Generally, a Rule 12(b)(1) motion takes one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction or; (2) a challenge to the actual facts upon which subject matter jurisdiction is based.[7] In reviewing a facial attack on the complaint, the district court must accept all factual allegations as true.[8] "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which is becomes apparent that jurisdiction is lacking."[9]

### B.  Motion to dismiss under Rule 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a claim where the plaintiff has failed to state a claim upon which relief can be granted.[10] Upon such a motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on

---

[4] Fed. R. Civ. P. 12(b)(1).

[5] *See In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 1170 (10th Cir. 2023) (citations omitted).

[6] *Id.*

[7] *Holt v. United States*, 36 F.3d 1000, 1002–03 (10th Cir. 1995), *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425 (2001)).

[8] *Id.* at 1002.

[9] *Siloam Springs Hotel, LLC v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018) (quoting *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1999)).

[10] Fed. R. Civ. P. 12(b)(6).

its face.' "[11] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[12] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of the claims and the grounds on which each claim rests.[13] Under Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and construe them in a light most favorable to the plaintiff.[14] But the court need not afford such a presumption to legal conclusions.[15] Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[16] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then a plaintiff has 'not nudged their claims across the line from conceivable to plausible.' "[17]

## C.      Pro se Plaintiffs

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers."[18] A pro se litigant is entitled to a liberal construction of his pleadings.[19] If a court can reasonably read a pro se complaint in such a way that it could state a claim on which it could

---

[11] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[12] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[13] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[14] *Iqbal*, 556 U.S. at 678–79.

[15] *Id.*

[16] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.") (citation omitted).

[17] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[18] *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[19] *See Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) ("Because Mr. Trackwell appears pro se, we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys.").

prevail, it should do so despite "failure to cite proper legal authority . . . confusion of various legal theories . . . or [Plaintiff's] unfamiliarity with the pleading requirements."[20] However, it is not the proper role of a district court to "assume the role of advocate for the pro se litigant."[21] Additionally, a pro se litigant is not excused from complying with the rules of the Court and is subject to the consequences of noncompliance.[22]

For example, when a pro se plaintiff fails to timely file a response, the court will ordinarily consider the motion as uncontested and grant the motion without further notice.[23] But at the motion to dismiss stage, lack of response alone is not enough to grant the moving party's motion.[24] Instead, the court "must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief may be granted."[25]

### III.    Analysis

### A.    Sovereign immunity bars Plaintiff from successfully pleading § 1983 claims against Defendants in their official capacities.

The Eleventh Amendment grants states immunity "from any suit in law or equity, commenced or prosecuted" by their own citizens.[26] This includes actions for damages against state

---

[20] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[21] *Id.*

[22] *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citation omitted).

[23] D. Kan. R. 7.1(c).

[24] *Persik v. Manpower Inc.*, 85 F. App'x 127, 130 (10th Cir. 2003) (citation omitted).

[25] *Id.*

[26] U.S. CONST. amend. XI; *see also Guttman v. Khalsa*, 669 F.3d 1101, 1111 (10th Cir. 2012) ("[T]he Supreme Court has repeatedly held States are immune to unconsented suits brought by their own citizens as well.").

agencies and officials acting in their official capacities.[27] "Once effectively asserted, Eleventh Amendment immunity constitutes a bar to the exercise of federal subject matter jurisdiction."[28]

Congress may abrogate Eleventh Amendment immunity "when it both unequivocally intends to do so and act[s] pursuant to a valid grant of constitutional authority."[29] Absent such abrogation, the defense of sovereign immunity applies unless the state has waived the defense or the plaintiff "seeks only prospective injunctive or declaratory relief against state officials for an ongoing violation of federal law."[30]

Seeking termination of a defendant's employment as a form of relief is not within a court's authority to grant.[31] As interpreted by the Tenth Circuit, § 1983 does not abrogate sovereign immunity.[32] Likewise, the State of Kansas "has not waived its sovereign immunity from suits seeking damages" under § 1983.[33]

Plaintiff's Complaint facially only requests monetary damages, a form of relief barred by sovereign immunity. Thus, sovereign immunity bars these claims against Defendants in their official capacities.

Liberally construing Plaintiff's Complaint, it is possible that he also seeks very specific injunctive relief—that is, Plaintiff requests that Defendant Wallace be "relieved of his duties." The

---

[27] *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019) (citing *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013)).

[28] *Id.* (brackets, citation, and quotations omitted).

[29] *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (citation and internal quotation marks omitted).

[30] *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (citation omitted).

[31] *Blackman v. Sedgwick Cnty. Jail*, 2022 WL 17177343, at *3 (D. Kan. 2022) (summarizing cases from across the country that discuss the court's lack of authority to terminate employment).

[32] *Muscogee Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 (10th Cir. 2010) (citation omitted).

[33] *Wendt v. Univ. of Kan. Med. Ctr.*, 274 Kan. 966, 981, 59 P.3d 325, 335 (2002) (quoting *Beck v. Kan. Adult Auth.*, 241 Kan. 13, 735 P.2d 222, 229 (1987)).

Court, however, is without authority to terminate a defendant's employment as a form of injunctive relief. Therefore, the Court finds that Plaintiff's claims against Defendants in their official capacities are barred by the Eleventh Amendment. The Court grants Defendants' Motion to Dismiss Plaintiff's § 1983 claims against them in their official capacities.

**B.      Plaintiff fails to plausibly state a First Amendment Retaliation Claim.**

Plaintiff claims he was denied immediate medical treatment in retaliation for a past PREA complaint that he filed in "2019-2020." "Prison officials may not retaliate against or harass an inmate because of the inmate's previous exercise of his constitutional rights[,] . . . [such as] filing administrative grievances."[34] In order to state a First Amendment Retaliation claim, a plaintiff must allege:

> (1) that he was engaged in constitutionally protected activity; (2) that the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in such activity; and (3) that the defendant's adverse action was substantially motivated as a response to his exercise of constitutionally protected conduct.[35]

To satisfy the third prong, an inmate must allege specific facts showing that "but for the retaliatory motive, the incidents to which he refers . . . would not have taken place."[36] The "but for" requirement may be satisfied when an inmate's complaint alleges that the defendants were aware of his protected activity, that the inmate complained of their actions, and the retaliatory action was in close temporal proximity to the protected activities.[37] The Tenth Circuit has held that

---

[34] *Banks v. Katzenmeyer*, 645 F. App'x 770, 772 (10th Cir. 2016) (brackets, citations, and quotation marks omitted).

[35] *Id.* (citing *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007)) (brackets omitted).

[36] *Id.* (citing *Peterson v. Shanks*, 149 F.3d 1140, 1133 (10th Cir. 1998)).

[37] *Gee v. Pacheo*, 627 F.3d 1178, 1189 (10th Cir. 2010) (citations and quotations omitted).

if an adverse action occurs more than three months after the constitutionally protected activity, it is insufficient to independently support a finding of causation.[38]

Here, Plaintiff fails to plead sufficient facts to plausibly state a First Amendment Retaliation claim. Plaintiff asserts that he was refused immediate medical treatment because of a past PREA complaint that he filed against Defendant Wallace in "2019-2020." However, Plaintiff fails to allege any facts that Defendant Wallace knew of the PREA complaint. Also, the PREA complaint was filed either two or three years before Plaintiff was allegedly refused medical treatment. Consequently, Plaintiff's factual allegations do not plausibly indicate that Defendants' actions were substantially motivated as a response to his PREA complaint or that Defendants' actions were in close temporal proximity to his PREA complaint. As a result, Plaintiff fails to state a plausible First Amendment Retaliation claim against Defendants. The Court grants Defendants' Motion to Dismiss Plaintiff's First Amendment Retaliation Claim.

**C.    Plaintiff fails to plausibly overcome Defendants' assertion of qualified immunity.**

Plaintiff also claims that Defendants violated his Eighth Amendment rights against cruel and unusual punishment. Defendants assert qualified immunity as a defense to this claim. It is well established that "individual defendants named in a § 1983 action may raise a defense of qualified immunity."[39] "The doctrine of qualified immunity shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law."[40] When the defense of qualified immunity is asserted, the burden shifts to the plaintiff to show: "(1) that the

---

[38] *Lauck v. Campbell Cnty.*, 627 F.3d 805, 815–16 (10th Cir. 2010) (finding the temporal proximity causation analysis used in the context of Title VII, Fair Labor Standards Act, and Americans with Disabilities Act could also be applied in the context of a First Amendment Retaliation claim).

[39] *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir. 2013).

[40] *Id.* (quotations and citation omitted).

defendant's actions violated a federal constitutional or statutory right, and if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct."[41] The Court has discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[42] "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant[s] qualified immunity."[43]

Here, Plaintiff alleges that Defendants violated his Eighth Amendment rights against cruel and unusual punishment by preventing medical treatment for his serious medical needs, i.e., his seizures. Defendants respond by asking the Court to dismiss Plaintiff's Eighth Amendment claims based on qualified immunity. At the motion to dismiss stage, the defendant's conduct as alleged in the complaint is scrutinized for objective legal reasonableness.[44] Further, "[a] plaintiff need 'only allege enough factual matter' to state a claim that is 'plausible on its face and provide fair notice to a defendant.' "[45]

###### 1.    *Plaintiff fails to plausibly allege an underlying violation of a constitutional right.*

Plaintiff alleges that Defendants violated his Eighth Amendment rights against cruel and unusual punishment by preventing medical treatment for his seizures. The Eighth Amendment prohibits the infliction of cruel and unusual punishments.[46] It is well established that the

---

[41] *Id.* (citation omitted).

[42] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

[43] *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citation omitted).

[44] *Id.* (citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

[45] *Sayed v. Virginia*, 744 F. App'x 542, 546 (10th Cir. 2018) (quoting *Keith v. Koerner*, 707 F.3d 1185, 1187 (10th Cir. 2013)) (addressing qualified immunity at the motion to dismiss stage).

[46] U.S. Const. amend. VIII.

" 'unnecessary and wanton infliction of pain' . . . constitutes cruel and unusual punishment."[47] However, "[w]hat is necessary to establish an 'unnecessary and wanton infliction of pain' . . . varies according to the nature of the alleged constitutional violation."[48] This is because penal measures are evaluated against the Eight Amendment's "broad and idealistic concepts of dignity, civilized standards, humanity, and decency."[49]

For example, in the excessive force context, the Eighth Amendment is violated "[w]hen prison officials maliciously and sadistically use force to cause harm."[50] This test turns on " 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.' "[51]

In contrast, "the appropriate inquiry when an inmate alleges that prison officials failed to attend to medical needs is whether the officials exhibited deliberate indifference."[52] The test for deliberate indifference to serious medical needs "is both objective and subjective."[53] "The objective component focuses on the 'seriousness of the plaintiff's alleged harm,' and the subjective component focuses on 'the mental state of the defendant with respect to the risk of that harm.' "[54]

---

[47] *Whitley v. Albers*, 475 U.S. 312, 219 (1986) (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)) (internal quotation marks omitted).

[48] *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley*, 475 U.S. at 320).

[49] *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quotations omitted).

[50] *Hudson*, 503 U.S. at 9 (discussing that the malicious and sadistic standard applies most commonly in the context of prison disturbances and riots where prison officials are required to act quickly and decisively); *see Hope v. Pelzer*, 536 U.S. 730, 737–38 (2002) (declining to apply the malicious and sadistic standard when the inmate was confined and there was a clear lack of an emergency situation).

[51] *Hudson*, 503 U.S. at 6 (quoting *Whitley*, 475 U.S. at 320–21).

[52] *Id*. at 5 (citing *Estelle*, 429 U.S. at 104) (internal quotations omitted).

[53] *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).

[54] *Paugh v. Uintah Cnty.*, 47 F.4th 1139, 1154–55 (10th Cir. 2022) *cert denied sub nom. Anderson v. Calder*, 143 S. Ct. 2658 (2023).

A prison official's consideration of administrative concerns is examined under the subjective component of the deliberate indifference analysis.[55]

Defendants assert that the Court should not apply the deliberate indifference standard and should instead apply the "malicious and sadistic" standard. Defendants argue the higher standard should apply for two reasons. First, they acted under time pressure because Plaintiff's seizures occurred for limited periods of time. Second, they acted with a need to balance competing safety concerns for prison staff because Plaintiff has a history of weapons possession. The Court finds this argument unpersuasive.

Accepting Plaintiff's factual allegations as true, the emergent situation was the risk of the seizures to Plaintiff's health and safety. The Complaint does not allege the presence of a prison riot, a prison disturbance, a weapon, or the use of excessive force by Defendants. The Court recognizes that prison officials must remain prepared to protect and defend themselves and the security of the institution. However, when a plaintiff alleges that prison officials failed to attend to medical needs, the proper standard is deliberate indifference. The reasons Defendants provide to argue for the application of the "malicious and sadistic" standard are administrative concerns. Arguments regarding administrative concerns are examined under the subjective inquiry of the deliberate indifference standard. Thus, the Court finds the deliberate indifference standard is applicable to this case.

---

[55] *Helling v. McKinney*, 509 U.S. 25, 37 (1993) ("The inquiry into [the subjective factor] also would be an appropriate vehicle to consider arguments regarding the realities of prison administration."); *see Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1273–75 (11th Cir. 2020) (examining prison security concerns under the subjective component of the deliberate indifference analysis); *Arenas v. Calhoun*, 922 F.3d 616, 621–24 (5th Cir. 2019) (analyzing a prison official's safety concerns under the subjective component of the deliberate indifference analysis); *Kosilek v. Spencer*, 774 F.3d 63, 91–92 (1st Cir. 2014) (considering the security concerns prison officials had regarding an inmate's request for sexual reassignment surgery under the subjective inquiry of the deliberate indifference analysis).

Defendants argue that even under the deliberate indifference standard, Plaintiff fails to allege facts that plausibly meet the objective and subjective components of the test. Accepting Plaintiff's factual allegations as true, the Court finds that Plaintiff plausibly meets the objective component but fails to plausibly allege the subjective component of the deliberate indifference to serious medical needs test.

    a.   Objective inquiry

The objective inquiry asks whether "the harm suffered rises to a level sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause of the Eighth Amendment."[56] The Tenth Circuit has made clear that a plaintiff may meet his burden on the objective inquiry in two ways. First, a harm is "sufficiently serious" if "the condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."[57] Second, even if the plaintiff's symptoms standing alone are not sufficiently serious, he may rely on the "intermediate harm" analysis to show that the sufficiently serious "resulting harm," was caused by the failure to treat his intermediate symptoms.[58] At the pleading stage, Plaintiff need only plausibly allege an sufficiently serious harm or a intermediate harm to proceed.[59]

Plaintiff has done so here. Plaintiff alleges that Defendants witnessed him having two seizures.[60] After his first seizure, Plaintiff alleges he was "barely conscious on the floor inside [his]

---

[56] *Martinez*, 563 F.3d at 1088 (citations and internal quotation marks omitted).

[57] *Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, 1044 (10th Cir. 2022) (quoting *Al-Turki v. Robinson*, 762 F.3d 1188, 1192–93 (10th Cir. 2014)).

[58] *Id.* at 1045 (citations omitted).

[59] *Teetz v. Sedgwick Cnty. Kansas*, 2022 WL 17403164 at *8 (D. Kan. 2022).

[60] Defendants contend Plaintiff only alleges that they observed the second seizure. However, in Plaintiff's Complaint he alleges that "officers stood outside my cell watching me have *multiple* seizures." (emphasis added).

cell lying in [his] own vomit, urine, and blood." He alleges that during his second seizure Defendants "stood outside [his] cell watching [him] shake and choke in [his] own vomit, blood and urine." Accepting Plaintiff's allegations as true, a lay person could easily and obviously recognize the need for medical attention. Therefore, Plaintiff's seizures qualify as an objectively serious medical need.

Defendants' contention that Plaintiff fails to allege that he suffered substantial harm from the delay in medical treatment is without merit. This argument may apply to the second means at a plaintiff's disposal of showing an objectively serious harm—that is, the "intermediate harm" analysis. When the plaintiff's symptoms standing alone are not sufficiently serious, the intermediate harm analysis allows the plaintiff to show that a sufficiently serious resulting harm was caused by the disregard of his symptoms.[61] However, it does not undermine Plaintiff's first avenue under the "sufficiently serious" standard. Plaintiff does not need to rely on the intermediate harm analysis, as he has alleged a sufficiently serious medical need—seizures—such that it would be obvious to a layperson that Plaintiff required medical attention. Thus, Plaintiff has plausibly alleged that he had an objectively serious medical need. Because Plaintiff meets the objective component of deliberate indifference test, the Court now turns to the subjective component.

b.   Subjective inquiry

The subjective component of the Eighth Amendment analysis requires the Court to consider "the prison official's culpable state of mind,"[62] specifically whether the plaintiff's factual allegations plausibly support a finding or inference that defendant " 'knows of and disregards an

---

[61] *Teetz*, 2022 WL 17403164 at *8.

[62] *Prince*, 28 F.4th at 1045 (citing *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)).

excessive risk to inmate health or safety.' "[63] "[T]he official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[64]

However, a plaintiff "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate."[65] A defendant's knowledge can be inferred from circumstantial evidence.[66] "For example, the existence of an obvious risk to health or safety may indicate awareness of the risk."[67] "[W]hen a jail official knows, or 'refuse[s] to verify underlying facts that he strongly suspected to be true, or decline[s] to confirm inferences of risk that he strongly suspected to exist' about an inmate's serious medical need, the official's failure to obtain medical assistance constitutes deliberate indifference."[68] The Tenth Circuit has "found deliberate indifference when jail officials confronted with serious symptoms took no action to treat them."[69]

---

[63] *Locke v. Root*, 2023 WL 2914184 at *8 (D. Kan. 2023) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

[64] *Farmer*, 511 U.S. at 837.

[65] *Id*. at 842.

[66] *DeSpain v. Uphoff*, 264 F.3d 965, 975 (10th Cir. 2001).

[67] *Rife v. Okla Dep't of Pub. Safety*, 854 F.3d 637, 647 (10th Cir. 2017); *see also Farmer*, 511 U.S. at 842 ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.").

[68] *Paugh*, 47 F.4th at 1159 (quoting *Farmer*, 511 U.S. at 843 n.8); *see also Mata v. Saiz*, 427 F.3d 745, 752 751 (10th Cir. 2005) (deliberate indifference does not require a prison official to "believe[e] that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm") (citation and emphasis omitted); *see, e.g.*, *Tlamka v. Serrell*, 244 F.3d 628, 633 (10th Cir. 2001) ("Based on the obvious and serious nature of [the inmate's] condition, the corrections officers' alleged failure to even approach [the inmate] during the maximum 10-minute period would rise to a showing of deliberate indifference."); *Sealock v. Colorado*, 218 F.3d 1205, 1210–11 (10th Cir. 2000) (finding deliberate indifference where a shift commander failed to act after inmate stated he might be having a heart attack and displayed symptoms consistent with a heart attack).

[69] *Burke v. Regalado*, 935 F.3d 960, 993 (10th Cir. 2019).

Administrative concerns such as security risks and time restraints are also considered when determining whether the prison official was deliberately indifferent.[70]

Accepting Plaintiff's allegations as true and drawing all reasonable inferences in his favor, the two Defendants were: (1) notified that Plaintiff was having a seizure; (2) observed Plaintiff having two seizures; (3) witnessed Plaintiff lying barely conscious on the floor in his own vomit, urine, and blood; and (4) during the second seizure saw Plaintiff shake and choke in his own vomit, blood, and urine. As noted above, these facts as pleaded obviously indicate that Plaintiff required medical attention. Defendant Clemons responded by calling a medical code on his radio and requesting authorization from Defendant Wallace to execute a forced cell entry. This fact indicates that Defendants knew Plaintiff's seizures presented a very real risk to himself. Plaintiff does not need to allege that Defendants knew the exact criteria of what constitutes a medical emergency, the inference of Defendants' state of mind can be drawn from the facts alleged. Despite this acknowledgement of Plaintiff's serious medical need, Defendants refused to execute a forced cell entry to allow for medical assessment and treatment because of safety concerns for prison staff.

Defendants argue they were not deliberately indifferent because they acted under time pressure—Plaintiff's seizures occurred for limited periods of time—with a need to balance a competing institutional concern—safety concerns for prison staff because Plaintiff has a history of weapons possession. Plaintiff alleges in his complaint that Defendants refused to conduct a forced

---

[70] *See Helling*, 509 U.S. at 37 ("The inquiry into [the subjective factor] also would be an appropriate vehicle to consider arguments regarding the realities of prison administration."); *Keohane*, 952 F.3d at 1272–76 (finding a prison's denial of an inmate's social transitioning requests was not deliberate indifference because an alternative treatment was available and security concerns that the inmate would become a target for abuse); *Arenas*, 922 F.3d at 621–24 (finding a prison official was not deliberately indifferent when he waited to enter inmate's cell because of security concerns and followed prison protocol to enter the cell); *Kosilek*, 774 F.3d at 96 (finding a prison's refusal of an inmate's request for sexual reassignment surgery was not deliberately indifferent when the surgery would create security concerns and an alternative form of care was offered).

-16-

cell entry because of his history of weapons possession.[71] However, accepting Plaintiff's allegations as true, the forced cell entry protocol was established for situations when an inmate is unable to come to the door during a medical emergency. As alleged by Plaintiff, the forced cell entry protocol contemplates the safety concerns of prison staff because the protocol is executed by five officers, all cellmates are restrained at the cell door, officers enter the cell with safety shields, and the inmate is restrained to be medically assessed.

Nonetheless, Plaintiff fails to allege that a forced cell entry could have been conducted within the short period of time that his seizures transpired. Plaintiff alleges the second seizure occurred "just minutes" after the first seizure. The Complaint does not allege how long a forced cell entry typically takes or that a forced cell entry could have been conducted in the short period of time that Plaintiff's seizures occurred.

Additionally, Defendants did not fail to act despite the lack of a forced cell entry. Defendants and medical staff monitored Plaintiff's symptoms from outside of the cell. Plaintiff also received medical assessment and treatment when he came to the door, with the help of his cellmate, after his second seizure concluded. Defendants' decision to monitor Plaintiff instead of conducting a forced cell entry was a split-second decision made to best balance safety concerns for both Plaintiff and prison staff. Therefore, the actions taken by Defendants do not rise to the standard of deliberate indifference.

Taking the Complaint as a whole, Plaintiff fails to plausibly allege that Defendant's violated his Eighth Amendment rights by being deliberately indifferent to Plaintiff's serious need

---

[71] Plaintiff goes on to discuss various disciplinary reports he has received including ones for "dangerous contraband" and "weapons possession."

for medical care. Thus, Plaintiff fails to satisfy the first prong of the qualified immunity analysis. As a result, the Court grants Defendants qualified immunity.

2.    *Plaintiff fails to plausibly allege that the constitutional right was clearly established at the time of the alleged unlawful conduct.*

Even if Plaintiff plausibly alleged an underlying Eight Amendment violation by Defendants, he fails to plausibly allege that having prison officials conduct a forced entry during a serious medical need to administer medical treatment is a clearly established right. A right is "clearly established" if Supreme Court or Tenth Circuit precedent (or the weight of authority from other circuits) would put reasonable officers in the defendants' position on notice they were violating the constitution or statute.[72] The law must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[73] This does not require the existence of a case exactly on point,[74] but does require that the existing caselaw be sufficiently clear to place the constitutional issue "beyond debate."[75]

Plaintiff cites the following cases: *Estelle v. Gamble*,[76] *Hill v. Dekalb Regional Youth Detention Center*,[77] and *Jet v. Penner*.[78] The United States Supreme Court in *Estelle* determined

---

[72] *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1210 (10th Cir. 2017); *see Ullery v. Bradley*, 949 F.3d 1282, 1291–92 (10th Cir. 2020) (finding a right was clearly established based on the consensus of persuasive authority from six other circuits).

[73] *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (further citation and quotations omitted).

[74] *See Hope*, 536 U.S. at 740–41; *Paugh*, 47 F.4th at 1167 ("[T]his inquiry does not require a scavenger hunt for prior cases with precisely the same facts.") (quotations and citation omitted); *Est. of Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020) (" '[A] prior case need not be exactly parallel to the conduct here for the officials to have been on notice of clearly established law.' ") (quoting *Halley v. Huckaby*, 902 F.3d 1136, 1149 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 1347 (2019)).

[75] *White v. Pauly*, 137 S. Ct. 548, 551 (2017).

[76] 429 U.S. 97 (1976).

[77] 40 F.3d 1176 (11th Cir. 1994) *overruled in part on other grounds by Hope*, 536 U.S. 730.

[78] 439 F.3d 1091 (9th Cir. 2006).

that because an inmate relies upon prison authorities to treat his medical needs, the "[intentional] denying or delaying access to medical care" for serious medical needs violates the inmate's Eighth Amendment rights.[79] "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."[80]

The Eleventh Circuit in *Hill* recognized the Eighth Amendment rights of an inmate are violated by the " 'deliberate indifference to serious medical needs of prisoners.' "[81] In *Hill*, the Eleventh Circuit found an inmate's Eighth Amendment rights were not violated by a delay in medical care when prison officials were unaware of the inmate's serious medical need.[82] The Eleventh Circuit discussed that the Eighth Amendment is violated when a prison official purposefully ignores or fails to respond to an inmate's pain or possible medical need.[83]

Further, the Ninth Circuit in *Jet* held that a prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment.[84] Specifically, the Ninth Circuit discussed that an inmate's Eighth Amendment rights were violated when prison administrators "knowingly fail to respond to an inmate's requests for help [for his serious medical needs]."[85]

Plaintiff alleges that Defendants violated his Eight Amendment rights against cruel and unusual punishment by preventing the administration of medical treatment for his serious medical

---

[79] *Estelle*, 429 U.S. at 103–04.

[80] *Id.* at 104.

[81] *Hill.*, 40 F.3d at 1190–91 (quoting *Estelle*, 429 U.S. at 104).

[82] *Id.*

[83] *Id.* at 1191.

[84] *Jet*, 439 F.3d at 1096 (quoting *Estelle*, 429 U.S. at 104).

[85] *Id.* at 1098.

needs, i.e., his seizures. Defendants argue that Plaintiff fails to plausibly allege the constitutional right is clearly established because there is "no clearly established law within [the Tenth] Circuit, or a robust consensus of cases outside of [the Tenth Circuit]" that are "particularized to the facts of this case."

Plaintiff's pleadings include citations to *Estelle*, *Hill*, and *Jet*. *Hill* and *Jet* do not create the weight of authority needed for the Court to rely on precedent from other circuits. The Tenth Circuit has held that a consensus of authority from six other circuits is sufficient to show that a right is clearly established.[86] Two cases from two different circuits falls drastically short of the weight of authority of six other circuits in consensus. Thus, Plaintiff's citations to *Hill* and *Jet* are not a weight of authority that the Court can rely upon when determining if Plaintiff has met his burden of showing that having prison officials conduct a forced entry during a serious medical need to administer medical treatment is a clearly established right.

The Court has carefully examined the Supreme Court case provided in Plaintiff's Complaint, and it is sufficiently clear that a prison official's inaction towards or ignoring of an inmate's serious medical need (or even possible symptoms of a serious medical need) violates the Eighth Amendment. However, Plaintiff's citation to *Estelle* does not help him considering the facts of this case. Instead, it merely lays out in broad strokes the unquestioned right to receive medical treatment. Here, it is undisputed that Plaintiff received medical treatment when he came to the door after his second seizure. The question, therefore, is not whether a constitutional right to medical treatment is clearly established but whether a constitutional right to have prison officials

---

[86] *Ullery*, 949 F.3d at 1291–92.

conduct a forced entry during a serious medical need to administer medical treatment is clearly established.

*Estelle* does not address this question. And Plaintiff has not proffered any other cases showing precedent from the Supreme Court, the Tenth Circuit, or any weight of authority from other Circuits that discuss this question. Therefore, based on the Supreme Court case presented by Plaintiff, it is not sufficiently clear whether a prison official's decision, made within a short window of time while considering safety concerns, to monitor an inmate from outside of the cell instead of forcibly entering the cell clearly violates the Eighth Amendment. Thus, the Court finds that Plaintiff fails to meet his burden of sufficiently alleging facts that plausibly state the constitutional right was clearly established at the time of the alleged unlawful conduct.

Plaintiff fails to allege sufficient facts to plausibly state an Eighth Amendment violation of deliberate indifference to serious medical needs and that the right was clearly established at the time of the alleged conduct. Therefore, the Court grants Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claims against them in their individual capacities. As a result, the Court does not reach Defendant's Motion for Summary Judgment on Plaintiff's Eighth Amendment claims.

Because the Court granted Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claims, Defendants' Motion for punitive damages under § 1983 is denied as moot.

**D.      Because none of Plaintiff's federal law claims remain, the Court declines to exercise jurisdiction over his state law negligence claim.**

"[F]ederal courts are courts of limited subject-matter jurisdiction," and they "may only hear cases when empowered to do so by the Constitution and by act of Congress."[87] Plaintiffs may seek

---

[87] *Gad v. Kan. State Univ.*, 787 F.3d 1032, 1035 (10th Cir. 2015) (further citations and quotations omitted).

relief in federal courts based on either federal question jurisdiction or diversity jurisdiction.[88] If the claim arises "under the Constitution, laws, or treaties of the United States" then federal question jurisdiction is proper.[89] Diversity jurisdiction arises where the plaintiff and defendant are citizens of different states and the amount in controversy is more than $75,000.00.[90] Further, "[t]he federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that 'derive from a common nucleus of operative fact.' "[91] However, "under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction where it 'has dismissed all claims over which it has original jurisdiction.' "[92]

Plaintiff fails to allege any facts that invoke this Court's subject-matter jurisdiction for his state law negligence claim. Because Plaintiff's only remaining claim arises under state law and Plaintiff fails to plead facts required to invoke this Court's diversity jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's negligence claim. Consequently, the Court grants Defendants' Motion to Dismiss Plaintiff's negligence claim.

**IT IS THEREFORE ORDERED** that Defendants' Motion (Doc. 16) is **GRANTED** as to Plaintiff's § 1983 claims against Defendants in their official capacities, Plaintiff's First Amendment Retaliation claim, Plaintiff's Eighth Amendment claims arising under § 1983 against Defendants in their individual capacities, and Plaintiff's negligence claim.

---

[88] 28 U.S.C. § 1331, 1332.

[89] *Id*. § 1331.

[90] *Id*. § 1332(a).

[91] *City of Chicago v. International Coll. of Surgeons*, 522 U.S. 156, 164–65 (1997) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).

[92] *Muller v. Culbertson*, 408 F. App'x 194, 197 (10th Cir. 2011) (quoting 28 U.S.C. § 1367(c)(3)).

**IT IS FURTHER ORDERED** that Defendants' Motion (Doc. 16) as to Plaintiff's claims for punitive damages under § 1983 is **DENIED** as moot.

**IT IS SO ORDERED.**

Dated this 17th day of October, 2023.

This case is closed.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE